DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Steven Dickens, appeals from his conviction of rape in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} During the early morning hours of February 28, 2007, Dickens was drinking beer in his apartment on West 17th Street in Lorain with his brother Luke, some other friends, and Cynthia Winchell, who had been staying at the apartment for the past couple of weeks. Although Luke and the others eventually left, Dickens and Winchell continued to consume beer for several more hours.
 {¶ 3} Sometime after 11:00 a.m, Winchell called her sister because she wanted to leave and had no transportation. Winchell was unable to reach her sister at home because she had apparently gone to work. She continued to make calls, attempting to find someone who would give her a ride. Between phone calls, Dickens followed Winchell into the bathroom and would *Page 2 
not let her leave the room. He began hitting and punching her and calling her names. Winchell was able to run into one of the bedrooms and started to make another phone call. There was no lock on the bedroom door, however, so Dickens was able to follow her into the room. Dickens pushed Winchell onto the bed, pulled her pants down, and raped her vaginally and anally.
 {¶ 4} Winchell had dialed her sister's home again and then apparently dropped the phone just before Dickens attacked her in the bedroom. The call was answered by Reggie Cash, the live-in boyfriend of Winchell's sister, who overheard the entire incident. Although he thought the call was a "sick joke" at first, he eventually recognized Winchell's voice and the phone number on the caller ID and realized that Winchell was in trouble. Because Cash had no car at his home, he called Winchell's brother Chris and both men drove to the West 17th Street apartment.
 {¶ 5} While Cash and Chris Winchell were coming to Winchell's aid, however, she was able to break free from Dickens and run outside. Once outside, she discovered that another friend, whom she had paged prior to the rape, was waiting in his car for her and she left with him.
 {¶ 6} Dickens was charged with rape and sexual battery. Following a jury trial, Dickens was convicted of rape. He appeals and raises six assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED TO THE DETRIMENT OF THE APPELLANT BY ALLOWING WITNESSES TO TESTIFY WHEN PROPER DISCOVERY WAS NOT PROVIDED."
 {¶ 7} Through his first assignment of error, Dickens contends that the trial court erred by allowing Winchell and Cash to testify at trial because the prosecution had not disclosed these *Page 3 
witnesses' criminal records to defense counsel in a timely manner. The prosecutor did disclose the witnesses' criminal records to defense counsel at trial.
 {¶ 8} Although Crim. R. 16(E)(3) authorized the trial court to grant a continuance or issue another appropriate order due to the prosecutor's failure to provide timely discovery, defense counsel raised no objection to proceeding with the testimony of each witness. He did not request a continuance or otherwise indicate that he was unable to proceed with his cross-examination of either witness due to the late disclosure.
 {¶ 9} The Ohio Supreme Court has held that "prosecutorial violations of Crim. R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v.Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, at ¶ 131, citing State v.Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 10} The prosecutor explained that she had been unable to access the conviction records from her office, suggesting that there had been no willful failure to disclose. Although defense counsel noted that disclosure of the information prior to trial would have been preferable, he immediately proceeded to cross-examine each witness and gave no indication that Dickens suffered any prejudice due to the late disclosure of this information. Moreover, Dickens fails to offer any argument on appeal as to how his defense may have suffered prejudice. Because Dickens has failed to demonstrate reversible error, his first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE JURY LOST ITS WAY WHEN FINDING DICKENS GUILTY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 4 
 {¶ 11} Dickens contends that his conviction should be reversed because it was against the manifest weight of the evidence. To determine whether a conviction is against the manifest weight of the evidence, an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 12} A weight of the evidence challenge maintains that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. This Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 13} Dickens was convicted of one count of rape pursuant to R.C. 2907.02(A)(2), which required the State to prove that he purposely compelled Winchell to engage in sexual conduct with him by the use of force or a threat of force. Dickens maintains that the evidence established that he and Winchell had consensual sex and that the State's evidence to the contrary was not credible.
 {¶ 14} Although the defense presented witnesses who testified that Winchell and Dickens had a prior sexual relationship, in an attempt to establish reasonable doubt as to whether the two had engaged in consensual sex rather than rape, the State presented the testimony of several witnesses that Winchell did not consent to sexual conduct with Dickens on this occasion but that Dickens had forcibly raped her.
 {¶ 15} The defense attempted to establish that Winchell had lived at the apartment for six or seven weeks and that she and Dickens had a sexual relationship, but Winchell testified that *Page 5 
she had been living in the 17th Street apartment for no more than two or three weeks and her brother Chris testified that it had been closer to one week because Winchell had been living in his home prior to that time. Winchell insisted that she had never engaged in consensual sex with Dickens.
 {¶ 16} Winchell herself detailed the events surrounding the rape, including the rape itself. Winchell explained that Dickens first attacked her by following her through the apartment, hitting and punching her and that he then pushed her down on the bed, pulled off her pants and forced her to engage in vaginal and anal sex with him. She repeatedly said "No" and tried to break free from him. Winchell was finally able to punch Dickens in the face and get free.
 {¶ 17} Much of Winchell's testimony was corroborated by the testimony of Reggie Cash, her sister's boyfriend who had overheard the struggle on an open phone line. Winchell had placed another phone call to her sister's home just prior to the rape. She apparently dropped the phone when Dickens attacked her and Cash answered the call. Cash, who worked third shift and was trying to sleep at the time, explained that he first thought the call was a "sick joke," but he soon realized that someone was in trouble. Cash testified that he overheard an apparent struggle, including a man's voice saying "let me put it in" and "you know you want this" and a woman's voice repeatedly saying "No. No." Cash also heard the man call the woman a "bitch." Although Cash did not recognize the man's voice, he realized that the woman's voice was Winchell's so he immediately called her brother Chris so the two could come to her aid.
 {¶ 18} Cash and Chris Winchell both testified about the following events. They proceeded to the 17th Street apartment, unaware that Winchell had already left the scene with another friend. When Cash and Chris Winchell arrived at the apartment, they attempted to find *Page 6 
Winchell. They saw Dickens walking across the street. When Dickens overheard Chris' response to a cell phone conversation with Winchell, in which she apparently implicated "Steven," Dickens ran into the apartment and locked the door. Chris ran around to the other door and when he was able to get into the kitchen, Dickens was there holding a knife. Cash was able to persuade Chris to leave to go find his sister Cindy.
 {¶ 19} When Cash and Chris Winchell met up with Cindy Winchell at Cash's home, Cindy was "badly beaten," with bruises on her face and arm and her lip was bleeding. She was "crying hysterically" and, after she told Chris what had happened, he took her to the hospital.
 {¶ 20} The sexual assault nurse's examination of Winchell revealed that she had extensive bruising on her face, right hand, and her abdominal area. Winchell had pain and redness in her vaginal area and was in so much pain that the nurse could not complete a full vaginal examination.
 {¶ 21} Dickens was interviewed by the police and, although he claimed that he and Winchell had consensual sex, he admitted that he had beaten her. He claimed that the two had engaged in "rough sex."
 {¶ 22} One of the witnesses for the defense, another female who lived at the apartment, testified that Dickens and Winchell had a consensual sexual relationship. On cross-examination, however, she conceded that she had been romantically involved with Dickens' brother for over a year and the two had discussed strategies for defending Dickens against the rape charge. More significantly, the witness also admitted that Dickens had also attempted to force her to engage in sexual conduct with him in the past, but that she had been able to fight him off. *Page 7 
 {¶ 23} Given the evidence presented at trial, this Court cannot say that the jury lost its way in concluding that Dickens forcibly raped Winchell. The second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT WHEN IT ALLOWED STATEMENTS MADE TO THE SEXUAL ASSAULT NURSE EXAMINER (SANE) COME INTO EVIDENCE AND ALSO WHEN ADMITTING THE SANE REPORT AS THOSE STATEMENTS AND REPORTS IN THE CASE AT BAR WERE CREATED IN ORDER TO ASSIST IN PROSECUTING A SUSPECT AND ARE THEREFORE TESTIMONIAL IN NATURE AND DO NOT FALL UNDER THE MEDICAL EXCEPTION OF THE HEARSAY RULE."
 {¶ 24} Dickens argues that the trial court abused its discretion by admitting the Sexual Assault Nurse Examiner ("SANE") report and the testimony of the SANE nurse who examined Winchell because this evidence included statements by Winchell that were testimonial in nature and were not subject to cross-examination, thereby denying Dickens his constitutional right to confront witnesses against him.
 {¶ 25} Although Dickens raised an objection to the testimony of the SANE nurse on this issue, the record reveals no objection to the admission of the SANE report. Addressing the merits of this argument, Dickens immediately concedes that this Court has rejected similar arguments in prior appeals, yet he makes no attempt to distinguish the facts of this case, nor does explain why this Court should overrule its prior holdings. Moreover, in State v. Stahl, 111 Ohio St.3d 186,2006-Ohio-5482, at ¶ 1, the Ohio Supreme Court affirmed one of this Court's prior cases addressing this issue. An appellate court has no authority to overrule decisions of the Ohio Supreme Court but is bound to follow them. State v. Bruce, 170 Ohio App.3d 92, 2007-Ohio-175, at¶ 6. The third assignment of error is overruled. *Page 8 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY NOT ALLOWING DEFENSE COUNSEL TO EXAMINE A PRIOR STATEMENT AFTER CROSS-EXAMINATION HAD BEGUN AND WHEN THIS ERROR IS COMBINED WITH OTHER ERRORS THE CUMULATIVE EFFECT WOULD RISE TO THE LEVEL OF PLAIN ERROR."
 {¶ 26} Through his fourth assignment of error, Dickens contends that the trial court erred by failing to require the State to provide him with the prior written report of one of the State's witnesses, a police detective, so he could use it in his cross-examination of the witness. Dickens contends that the trial court was required by Crim. R. 16(B)(1)(g) to provide him with a copy of the detective's report.
 {¶ 27} Crim. R. 16(B)(1)(g) provides, in relevant part:
 "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."
 {¶ 28} Despite Dickens' argument to the contrary, Crim. R. 16(B)(1)(g) does not provide for automatic disclosure to defense counsel of a witness' prior statement. Instead, the statement is made available to defense counsel for use during cross-examination only if the trial court determines through an in camera inspection that inconsistencies exist between the witness' testimony and his prior statement.
 {¶ 29} Dickens did not formally move for an in camera inspection of the detective's report, nor he did object to the trial court's refusal to allow him to use the statement to cross-examine *Page 9 
the detective. Moreover, even if Dickens had properly requested a Crim. R. 16(B)(1)(g) in camera inspection of the detective's report, this Court cannot find reversible error without some showing of prejudice to the defense. See State v. Cunningham, 105 Ohio St.3d 197,2004-Ohio-7007, at ¶ 47-49. Dickens does not explain how he was prejudiced by his inability to cross-examine the detective with the report. Moreover, because the detective's report is not in the record, nor were any portions of it proffered into the record, it is impossible for this Court to determine whether there was any prejudice to Dickens. See State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 240.
 {¶ 30} To begin with, Dickens has failed to demonstrate to this Court that the detective's report or any portions of it qualified as a "prior statement" under Crim. R. 16(B)(1)(g). The Ohio Supreme Court has held that only those portions of a police officer's signed report that include the officer's observations and recollections constitute "statements" under Crim. R. 16(B)(1)(g). See Cunningham at ¶ 43. "Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim. R. 16(B)(2)." Id. Because no details of the detective's report are included the record, Dickens has failed to demonstrate that any of it qualifies as a "statement" under Crim. R. 16(B)(1)(g).
 {¶ 31} Moreover, even if portions of the report qualified as prior statements under Crim. R. 16(B)(1)(g), Dickens has not demonstrated that there were any inconsistencies between the detective's testimony and his prior statement. Unless there actually were material inconsistencies between the detective's testimony and his prior statement, and cross-examination on those inconsistencies would have benefited Dickens' defense, Dickens suffered no prejudice. *Page 10 
Because Dickens has failed to demonstrate any prejudicial error, his fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED THE MAXIMUM SENTENCE UPON DICKENS AND SAID SENTENCE SHOULD BE VACATED."
 {¶ 32} Dickens maintains that the trial court abused its discretion by imposing the maximum sentence for his rape conviction. He argues merely that the maximum sentence was too severe "based on the individual facts of the case," yet he fails to point to anything in the record, nor does he articulate any specific facts, to support his argument.
 {¶ 33} Given the evidence before the trial court about the physical violence and harm perpetrated against the victim prior to and during this crime, the multiple acts of rape, Dickens' prior convictions for gross sexual imposition against victims ages 12 and 13 years old as well as multiple convictions for escape, and a lack of any factors mitigating against a longer sentence, the trial court did not abuse its discretion in imposing the maximum sentence on Dickens. See State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, at ¶ 37. The fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI "THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT WHEN THE CUMULATIVE EFFECTS OF THE COURT'S ERRORS ARE CONSIDERED."
 {¶ 34} Finally, Dickens asserts that he was denied a fair trial by the cumulative effects of the errors raised through his other assignments of error. Cumulative harmless errors may justify a reversal of a conviction if the defendant was denied his constitutional right to a fair trial. See State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. Because Dickens *Page 11 
has failed to demonstrate any error in his trial, harmless or otherwise, it follows that there were no "cumulative" errors that denied Dickens his right to a fair trial. See State v. Knighten (Dec. 17, 1999), 5th Dist. No. L-97-1449. Dickens' sixth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Whitmore, J. Baird, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1