[Cite as *State v. Thomas*, 2015-Ohio-5247.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No.     27580 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEANDRA J. THOMAS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR 2014 02 0569 (B) |

DECISION AND JOURNAL ENTRY

Dated: December 16, 2015

SCHAFER, Judge.

**{¶1}** Defendant-Appellant, Deandra Thomas, appeals the judgment of the Summit County Court of Common Pleas convicting him on two counts of rape and one count of felonious assault and sentencing him to a total prison term of 13 years. For the reasons that follow, we affirm the trial court's judgment.

I.

**{¶2}** Thomas was indicted on the following charges: (1) two counts of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; (2) one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; and (3) one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree. The indictment arose from an incident in which Thomas allegedly punched a female victim, S.M., and forced her to have vaginal intercourse and perform fellatio on him without her consent and caused serious physical harm to her. The day after the incident, S.M. went to Barberton Citizens Hospital where she

presented with the following injuries: multiple bruises and scratches, a burn on her left shoulder, a swollen right eye, bleeding in the white of her left eye, and a chipped tooth. These injuries did not require surgery or hospitalization, but she was given pain medication and antibiotics to prevent the development of sexually transmitted diseases. After receiving treatment for her injuries, S.M. was transported to St. Thomas Hospital, where she underwent a sexual assault medical examination that was administered by Nurse Valorie Prulhiere.

{¶3} During the examination, several DNA samples were removed from S.M.'s body and turned over to the Ohio Bureau of Criminal Investigation for further testing. She explained to Nurse Prulhiere that she was romantically involved with Michael Person. The day before the examination, she went to Person's house, where a group of people were gathering to drink alcohol and socialize. S.M. stated that after the other guests left, Person began to assault her by beating her, cutting her with a knife, and burning her arm with a cigarette. S.M. also said that during the assault by Person, another person named "Dread" arrived, who forced her to perform fellatio on him and have vaginal intercourse without her consent. S.M. further indicated that "Dread" punched her right eye with a closed fist. This person left shortly afterwards and Person continued his assault, which included engaging in sexual conduct with S.M. without her consent.

{¶4} Detective Stephen Coburn of the Barberton Police Department conducted a follow-up investigation during which he discovered that "Dread" was Thomas. He subsequently interviewed Thomas, who admitted to being at Person's house the night of the alleged rape and assault for the purpose of buying drugs from Person. Thomas also admitted to having oral and vaginal intercourse with S.M., but he claimed to have only done it because Person demanded that he do it and he was fearful of Person. Further, BCI tested the DNA samples taken from S.M.'s body and the sample from her right breast matched Thomas's DNA.

{¶5}     This matter proceeded to a jury trial after which the jury found Thomas guilty of both rape counts and the felonious assault count.  It found him not guilty of kidnapping.  The trial court subsequently sentenced him to 13 years in prison.  Thomas filed this timely appeal, presenting four assignments of error for our review.

II.

### Assignment of Error I

**The introduction of highly prejudicial character evidence violated Thomas's due process rights under the 14th Amendment and his rights to due process and fair trial under the 6th Amendment and the Ohio Constitution, meriting reversal and a new trial.**

{¶6}     In his first assignment of error, Thomas advances two arguments.  First, he contends that the trial court erred by admitting improper character evidence under Evid.R. 404(B).  He specifically challenges the admission of his statements during the police interview indicating that he went to Person's house for the purpose of purchasing drugs.  Since Thomas has failed to properly preserve this issue for appellate review, we disagree.  Second, Thomas asserts that the trial court plainly erred by failing to issue a limiting instruction regarding the proper use of this evidence.  We also disagree on this point.

### A.  Admissibility of Thomas's Statements

{¶7}     Evid.R. 103(A)(1) requires that a party seeking to exclude evidence state "a timely objection or motion to strike * * * [that includes] the specific ground for objection, if the specific ground was not apparent from the context[.]"  Before trial commenced, Thomas's trial counsel stated his "concern" about the video recording of his confession since there are "different points [in which] Mr. Thomas makes an admission that his purpose for going to the house was to buy drugs, I believe specifically cocaine."  He went on to state, "I know how the prosecution feels that it's relevant, * * * [but] to protect the record, I would object."  When the

State played the video recording of the confession, Thomas's trial counsel did not state an objection on the record. However, when the State offered the video recording into evidence, Thomas's trial counsel stated, "I'll renew my objections as we did earlier about the whole buying drugs thing, which we didn't eliminate [from the recording], and the Court allowed it to come in."

{¶8}   It is clear from these statements that Thomas never objected to the evidence of his statements regarding drug use on the basis of impermissible character evidence. Rather, the only basis for his objection to this evidence was lack of relevance. Consequently, he has not properly preserved the Evid.R. 404(B) issue. *See State v. Williams*, 9th Dist. Summit No. 22877, 2006-Ohio-4720, ¶ 17-18 (determining that the defendant forfeited evidentiary issue since the specific ground for the objection asserted in the trial court was different from the one asserted on appeal). Instead, he has forfeited all but plain error in regard to this issue. *See State v. Tibbetts*, 92 Ohio St.3d 146, 161 (2001) ("Because he failed to object at trial on the specific ground raised here, [the defendant] has forfeited the issue, limiting us to a plain error analysis [of the defendant's Evid.R. 404(B) argument].").

{¶9}   Although Thomas has preserved plain error review in regard to the Evid.R. 404(B) issue, he has failed to argue the existence of plain error in the admission of this evidence on appeal. This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it. *E.g.*, *State v. McCrae*, 9th Dist. Summit No. 27387, 2015-Ohio-1803, ¶ 8 (collecting cases). As a result, we will not consider whether Thomas's statements regarding his purpose for going to Person's house were properly admitted under Evid.R. 404(B). *See State v. Ellis*, 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 27 ("[A]s [the defendant] has failed to argue plain error on appeal, this Court will not consider whether the

admission of the disputed evidence within the context of Evid.R. 404(B) constituted plain error.").

### B. Limiting Instruction Regarding Thomas's Statements

{¶10} Thomas did not request a limiting instruction for the use of his statements about purchasing drugs, so he has forfeited all but plain error on this point. *State v. Clay*, 9th Dist. Summit No. 27015, 2014-Ohio-3806, ¶ 61, citing *State v. Risden*, 2d Dist. Montgomery No. 22930, 2010-Ohio-991, ¶ 137. The plain error doctrine, as it is outlined in Crim.R. 52(B), may only be invoked where the following three elements apply:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of trial.

(Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). We are cautioned that plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶11} We cannot determine that the trial court's failure to issue a limiting instruction regarding Thomas's statements affected the outcome of trial. Thomas argues that these statements can only be taken to establish Thomas's propensity to purchase drugs and thus required a limiting instruction. But, even if this argument is accepted, such a propensity is immaterial here since it does not indicate whether Thomas was more likely to commit the charged offenses of rape and felonious assault. Moreover, the record does not reflect that the jury used these statements to convict Thomas simply because he may have been depicted as a person of poor character. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 91 ("Nothing suggests that the jury used 'other acts' evidence to convict [the defendant] because he

was a bad person. Accordingly, the trial court's failure to give limiting instructions did not constitute plain error."), citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 162. Indeed, Thomas's statements appear to bolster his defense that he did not go to Person's house on the night of the incident to rape and assault S.M. As a result, we are unable to conclude that the trial court committed plain error by not issuing a limiting instruction regarding Thomas's statements.

{¶12} Accordingly, we overrule Thomas's first assignment of error.

### Assignment of Error II

**The trial court created reversible error by permitting the nurse who completed the sexual assault examination to provide testimonial statements made by the alleged victim when the defendant did not have a previous opportunity for cross examination of the alleged victim.**

{¶13} In his second assignment of error, Thomas contends that Nurse Prulhiere's testimony regarding S.M.'s statements during the sexual assault medical examination was inadmissible as violative of his right to confront witnesses. We disagree.[1]

{¶14} We review the trial court's admission of evidence over a Confrontation Clause objection de novo. *State v. McNair*, 9th Dist. Lorain No. 13CA010485, 2015-Ohio-2980, ¶ 36. The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. The Ohio Constitution also provides criminal defendants with the right to confront witnesses in Article I, Section 10. *Toledo v. Sails*, 180 Ohio App.3d 56, 2008-Ohio-6400, ¶ 12 (6th Dist.). The import of these protections is that they "require[], wherever possible, testimony and cross-examination

---

[1] The State argues that Thomas failed to properly preserve this issue for appellate review. However, Thomas's trial counsel contemporaneously objected to Nurse Prulhiere's testimony regarding S.M.'s statements on the basis that they were "no longer for medical treatment purposes * * * but rather [for] evidence collection [purposes], which takes it into a testimonial situation where there's confrontation issues[.]" As a result, we conclude that this issue has not been forfeited on appeal.

to occur at trial." *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 21, citing *State v. Allen*, 8th Dist. Cuyahoga No. 82556, 2004-Ohio-3111, ¶ 17.

{¶15} The Confrontation Clause's protections are only invoked to bar the admission of out-of-court statements that are "testimonial." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 59. An out-of-court statement is testimonial, for Confrontation Clause purposes, "where it was given with the '"primary purpose of creating an out-of-court substitute for trial testimony."'" *McNair* at ¶ 38, quoting *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2183 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 351 (2011). Moreover, the United States Supreme Court has limited the Clause's breadth as "bar[ring] 'admission of testimonial statements of a witness *who did not appear at trial* unless he was unavailable to testimony, and the defendant had a prior opportunity for cross-examination.'" (Emphasis added.) *Davis v. Washington*, 547 U.S. 813, 821 (2006), quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Accordingly, "'[w]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.'" *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 127, quoting *Crawford* at 59, fn. 9, citing *California v. Green*, 399 U.S. 149, 162 (1970).

{¶16} We have consistently determined that a rape victim's out-of-court statements to a nurse conducting a sexual assault medical examination are non-testimonial. *E.g.*, *State v. Dickens*, 9th Dist. Lorain No. 07CA009218, 2008-Ohio-4404, ¶ 25 ("[T]his Court has rejected similar arguments [regarding the testimonial nature of rape victims' statements to nurses].'"); *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, ¶ 21 ("Based on our review of the statements, the circumstances, and the case as a whole, we find that these statements were made

for the purpose of medical diagnosis and treatment and were not testimonial as to necessitate a finding that this victim must have expected that they would have be available for later use at trial."), *aff'd*, 111 Ohio St.3d 186, 2006-Ohio-5482. Thomas attempts to distinguish *Stahl* on the grounds that (1) S.M. made her statements to police before the examination while she was at Barberton Hospital, not a police station; (2) Nurse Prulhiere told her that she was required to report her "knowledge of reported sexual assaults" to police; and (3) Detective Coburn told S.M. that he would follow-up with her at St. Thomas after the examination. According to Thomas, these circumstances would suggest to an objective witness that statements to Nurse Prulhiere would be used for evidence collection.

{¶17} We conclude that these circumstances are insufficient to distinguish this matter from *Stahl*. Thomas has provided no authority to support his propositions that the location of a victim's initial discussion with police and the police's promise of a follow-up after a medical examination indicate to a victim that her statements during the medical examination are part of evidence collection. *See* App.R. 16(A)(7). Additionally, Nurse Prulhiere's disclosure to S.M. that she reports to police regarding sexual assaults is similar to the disclosures provided by the hospital in *Stahl*, which supports applying our precedent as opposed to distinguishing it. *See Stahl* at ¶ 20 (discussing St. Thomas's consent form for the sexual assault medical examination process and determining that the victim's statements after signing the form were non-testimonial).

{¶18} Finally, even if the circumstances in this matter were such that *Stahl* and its progeny were distinguishable, there would still be no Confrontation Clause problem here. S.M. testified at trial and was subject to cross-examination, which precludes this Court from finding that Thomas's confrontation rights were violated. *See State v. Just*, 9th Dist. Wayne No.

12CA0002, 2012-Ohio-4094, ¶ 24 (holding that there was no Confrontation Clause violation since declarants "appeared at trial and testified"), citing *State v. Simmons*, 9th Dist. Summit No. 25275, 2011-Ohio-916, ¶ 9-10 (same). Thomas argues that there was nevertheless a Confrontation Clause violation because S.M. was cross-examined *after* Nurse Prulhiere's testimony. But, the fact that S.M., the declarant, testified after Nurse Prulhiere's testimony about S.M.'s out-of-court statements is immaterial to our Confrontation Clause analysis. *See State v. Keenan*, 81 Ohio St.3d 133, 142 (1998) (determining that there was no Confrontation Clause violation where police detective testified to declarant's out-of-court statement before the declarant testified); *accord Johnson v. Lockhart*, 71 F.3d 319, 321 (8th Cir.1995) ("[T]he dispositive point [for Confrontation Clause purposes] is that [the defendant] was afforded the opportunity to effectively *examine* [the declarant] under oath and in front of a jury about the out-of-court statements, not that the examination must occur during the prosecution's case."). Thus, we reject Thomas's argument on this point.

{¶19} Accordingly, we overrule Thomas's second assignment of error.

### Assignment of Error III

**The trial court committed reversible error when it found Thomas guilty of felonious assault because the evidence was insufficient to support such a finding.**

{¶20} In his third assignment of error, Thomas contends that there is insufficient evidence in the record to support his felonious assault conviction. We disagree.

{¶21} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St. 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the State, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, we "neither resolve evidence conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

**{¶22}** Thomas was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which pertinently provides that "[n]o person shall knowingly * * * cause serious physical harm to another[.]" "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The Revised Code defines "[s]erious physical harm to persons" as including the following:

> [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity[, a]ny physical harm that involves some permanent disfiguremenet or that involves some temporary, serious disfigurement[, or a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(c)-(e). Thomas challenges the sufficiency of the evidence on both the mental state element of "knowingly" and the element of "serious physical harm."

**{¶23}** At trial, S.M. testified that Thomas hit her in the right eye with a "[c]losed fist, really hard[,]" which she said "hurt real bad" to the point that she "thought he knocked [her] eye out." S.M. further testified that the punch caused her to have difficulty seeing and to continue having problems through the day of trial, which commenced six months after the alleged incident:

It hurt really, really bad; really bad. I thought [Thomas] had knocked my eye out at first because I seen a bright light and seen darkness and that's all. I thought my eye was like knocked in the back of my head. And it hurt bad. I have problems to this day behind it.

S.M.'s medical records were entered into evidence and the medical personnel who treated her testified as well. These records reflect that during her medical evaluation, S.M. described the pain to her right eye as a "10" on a scale from one to 10 with 10 being the most painful and that S.M. received a variety of pain medications. A picture of S.M.'s swollen right eye was also entered into evidence. Taking this evidence in the light most favorable to the State, we determine that there is sufficient evidence to support Thomas's felonious assault conviction. *See State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 12 ("'Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5).'"), quoting *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24; *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, ¶ 51 (finding that victim "sustained 'serious physical harm' through the bruising"), *rev'd in part on other grounds, sub nom. In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109; *State v. Stillman*, 5th Dist. Delaware No. 04CAA07052, 2004-Ohio-6974, ¶ 24-25 (finding that victim suffered serious physical harm where "her face was swollen" and had "trauma to the eye").

{¶24} Thomas specifically argues that there is insufficient evidence regarding the mental state element of "knowingly" because he denied punching S.M. in the video recording of the police interview.[2] This contention essentially rests on S.M.'s alleged lack of credibility, but such

---

[2] Thomas stated during the police interview that he "could have swung at [S.M.] just like mugged her out of bed."

an argument "rests in manifest weight, not sufficiency" and we consequently reject it. *State v. Alison*, 9th Dist. Summit No. 24719, 2010-Ohio-1340, ¶ 17. As to the serious physical harm element, Thomas's contention rests on the lack of evidence indicating that S.M.'s injuries were life-threatening and the lack of medical records confirming S.M.'s testimony as to the duration of the pain in her right eye. But, there is no requirement that to sustain a felonious assault, there must be proof that the victim suffered life-threatening injuries requiring surgery or hospitalization, *see* R.C. 2901.01(A)(5) (defining serious physical harm), or that there are medical records corroborating the duration of the effects from the victim's injury, *see State v. Ivory*, 8th Dist. Cuyahoga No. 84223, 2004-Ohio-5875, ¶ 22 (finding that there was sufficient evidence regarding serious physical pain where the victim testified to "her ongoing pain"). As a result, we must reject Thomas's contentions.

{¶25} Accordingly, we overrule Thomas's third assignment of error.

### Assignment of Error IV

**Thomas's convictions were against the manifest weight of the evidence, meriting reversal.**

{¶26} In his fourth assignment of error, Thomas challenges all of his convictions as against the manifest weight of the evidence. We disagree.

### A. Standard of Review

{¶27} A manifest weight of the evidence challenge to a criminal conviction is legally distinct from a sufficiency of the evidence challenge. *Thompkins*, 78 Ohio St.3d at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new

trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785 ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶28} In addition to the felonious assault conviction described in the discussion of his third assignment of error, Thomas was also convicted on two counts of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is relevantly defined as "vaginal intercourse between a male and a female; * * * [and] fellatio * * * between persons regardless of sex[.]" R.C. 2907.01(A). One count of rape related to the allegation that Thomas forced S.M. to perform fellatio on him. The other related to the allegation that Thomas forced S.M. to have vaginal intercourse with him.

**B. Manifest Weight Regarding Felonious Assault and Rape Convictions**

{¶29} S.M. testified in detail to the incident that gave rise to this matter. According to her testimony, Person started to assault her after the party. During the course of Person's attack, Thomas arrived at the house and Person told him that he could receive fellatio from S.M. Thomas then went into the room where S.M. was, pulled her hair, unzipped his pants, and forced her to perform fellatio without her consent. He also forced vaginal intercourse on S.M. without her consent. S.M.'s testimony explicitly describes her expression of the lack of consent and Thomas's disregard of it. While performing fellatio, she told Thomas "[t]o not do this; please don't do this" and that Thomas's only response was to tell her to "shut up." She also attested that during the course of the vaginal intercourse she "was crying and [she] was telling him please, stop" before trying to "convince him" to stop and let her sneak out of the house by

climbing out of the window. When Person came into the room, S.M. said that Thomas jumped off the bed and said, "[S.M.] playing. Watch her. Don't trust her. She tried to sneak out the window." He subsequently punched her face, causing her a swollen eye that required medical attention.

{¶30} Thomas contends that this testimony lacked credibility. But, the record does not reveal that S.M.'s testimony suffers from such serious discrepancies that we, as a reviewing court relying on "a cold, paper record," must supplant the jury's determination of credibility. *In re B.B.*, 8th Dist. Cuyahoga No. 81948, 2003-Ohio-5920, ¶ 31; *see also State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15 ("Further, the mere fact that [the defendant] offered his own self-serving contradictory testimony does not support a reversal on manifest weight grounds since the trier of fact '" is free to believe all, part, or none of the testimony of each witness."'"), quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Rather, from the record, we conclude that "the jury believed what [S.M.] said, and [Thomas] has not set forth any corroborating evidence as to why this Court should disrupt that finding, other than reiterating to us what 'he said.'" *State v. Martinez*, 9th Dist. Summit No. 24037, 2008-Ohio-4845, ¶ 17. Consequently, we reject Thomas's credibility-based argument for the reversal of his convictions on manifest weight grounds.

{¶31} Thomas also argues that his rape conviction for engaging in vaginal intercourse with S.M. was against the manifest weight of the evidence since the DNA sample taken from her vagina did not match his DNA. But, physical evidence is not required to support a rape conviction against a manifest weight challenge. *See id*. at ¶ 13 (rejecting manifest weight challenge to rape conviction even though there was "'little to no credible physical evidence'").

Additionally, the BCI forensic scientist who analyzed the DNA samples provided the following testimony regarding the lack of a match between Thomas's DNA and the sample taken from S.M.'s vagina:

> [I]f there was no fluid deposited there, so there was – if a person had contact in any way with and there's fluid present from another contributor, you may not be able to detect any DNA from this possible third person. So if someone had contact with the vaginal cavity but did not deposit semen, and someone else has semen there, we would not necessarily be able to detect that. It could be possible that it's there, but there's so much DNA from these other two people that it's an undetectable amount for our testing purposes.

From this testimony, the jury could reasonably conclude that the lack of physical evidence was not determinative as to whether Thomas had vaginal intercourse with S.M. Lastly, in the video recording of his police interview, Thomas admitted to engaging in vaginal intercourse with S.M., which renders any lack of physical evidence inconsequential to our manifest weight analysis.

### C. Affirmative Defense of Duress

{¶32} Thomas finally asserts that his convictions were against the manifest weight of the evidence because the record shows that he only performed the actions giving rise to his convictions due to duress created by Person. "Duress has long been recognized as an affirmative defense in Ohio," *State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, ¶ 29, citing *State v. Sappienza*, 84 Ohio St.3d 63 (1911), and defendants must prove it by a preponderance of the evidence, *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). Despite its technical viability as an affirmative defense, the Ohio Supreme Court has cautioned that "the defense of necessity or duress is strictly and extremely limited in application and will probably be effective in very rare occasions." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). We have previously set out the elements of duress as follows:

> In order to establish the defense of duress, one must establish the following: (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was

greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bring about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*Flinders* at ¶ 30, citing *State v. Lawson*, 2d Dist. Montgomery No. 22155, 2008-Ohio-1311, ¶ 20-21.

**{¶33}** Thomas's defense to the charges was that after he went to Person's house, Person instructed him to engage in sexual conduct with S.M. Although he claims that he did not want to have either oral or vaginal intercourse with S.M., Thomas admits that he nonetheless did because he was afraid of Person. In support of his duress defense, Thomas points to his statements during the video recording of the police interview.

**{¶34}** The jury did not accept Thomas's defense and chose to disbelieve his claims. After reviewing the video recording of the police interview and S.M.'s testimony, we cannot second-guess that determination on appeal. During the course of the police interview, Thomas's version of events dramatically changes. At first, he denied even knowing S.M. After being confronted with contrary evidence obtained during the police investigation, Thomas relented and admitted to both knowing S.M. and engaging in sexual conduct with her. Initially, though, he said that he only engaged in sexual conduct with S.M. because he "didn't want to seem like [a] sucker type[.]" Subsequently in the interview, Thomas's story changed and he claimed to have engaged in sexual conduct with S.M. because he was afraid of Person. Thomas said that he was fearful of Person due to his bigger size and his strange behavior the night of the incident. But, Thomas never told Detective Coburn during the interview that Person threatened him and he would only say that "possibly my [Thomas's] life was being threatened" at the time of the sexual conduct.

{¶35} In comparison to Thomas's changing version of events, the jury heard the following unequivocal testimony from S.M. on direct examination:

Q:  [W]hen you're performing oral sex on [Thomas], did [Person] have a knife to him?

A:  No.

Q:  Did he have a gun to his head?

A:  No.

Q:  Did he threaten him?

A:  No.

Q:  Did he say if you don't let her do this I'm going to kill you?

A:  No.

S.M. confirmed this testimony on redirect examination:

Q:  Michael Person threatened you, right?

A:  Yes.

Q:  Did you ever hear him threaten [Thomas]?

A:  No.

Q:  Michael Person hit you, right?

A:  Yes.

Q:  Did you ever see him hit [Thomas]?

A:  No.

*  *  *

Q:  Did you hear [Thomas] say to Michael Person anything about wanting to leave, I don't want to do this, this isn't right?

A:  No.

The jury could choose to believe S.M.'s consistent testimony over the changing version of events offered by Thomas in his police interview and we cannot disturb that choice on appeal. In sum, it was not against the manifest weight of the evidence for the jury to find that Thomas failed to prove the existence of duress.

{¶36} Accordingly, we overrule Thomas's fourth assignment of error.

III.

{¶37} Having overruled all of Thomas's assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
CONCURS.

MOORE, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.