[Cite as *State v. Humphries*, 2016-Ohio-1351.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 27819 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY J. HUMPHRIES | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2014 06 1711 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2016

---

HENSAL, Judge.

{¶1} Anthony Humphries appeals his convictions in the Summit County Court of Common Pleas for carrying a concealed weapon, having a weapon while under a disability, and aggravated menacing. For the following reasons, this Court affirms.

I.

{¶2} The Appellant, Anthony Humphries, lives with his wife and children at 657 Inman Street in Akron. On June 11, 2014, Mr. Humphries observed Thomas Litton and his step-father[1] removing aluminum siding from an adjacent home located at 644 Merton Avenue. Mr. Humphries did not recognize the men and became concerned that they were vandalizing the home. Mr. Humphries approached the men and an altercation ensued, which resulted in both parties calling the police and offering conflicting accounts of what transpired between them.

---

[1] We note that the record reflects that Mr. Litton's step-father passed away prior to trial.

{¶3} According to Mr. Litton, Mr. Humphries approached him and his step-father and began yelling at them to get away from the home because they had no business being there. Mr. Litton testified that the home belonged to his fiancée and her soon-to-be ex-husband, and that his fiancée was supposed to keep the home in the divorce. He and his step-father were there that afternoon replacing the aluminum siding and performing other remodeling work. Mr. Litton testified that he recognized Mr. Humphries from a previous encounter he had with him, but that his attempt to remind Mr. Humphries who he was proved unsuccessful.

{¶4} After Mr. Litton told Mr. Humphries to mind his own business, Mr. Humphries threw a rock at him that struck the house about ten feet above his head. Mr. Litton's testimony regarding the rock was corroborated by Officer Michael Stanar, who observed a dent in the siding and broken pieces of the rock in the driveway. Mr. Humphries then told Mr. Litton he "ha[d] something for [him]" and briefly went inside his home. When he returned, he pulled a gun from his waistband, which was initially concealed by his shirt, pointed it at Mr. Litton and his step-father, and threatened to kill them. Mr. Litton testified that he and his step-father were concerned that Mr. Humphries would cause them serious physical harm, and decided to call the police. Mr. Humphries then returned to his home.

{¶5} Mr. Litton told the 911 dispatcher that Mr. Humphries brandished a black and silver .38 caliber revolver and threatened to shoot him. During the course of their conversation, Mr. Litton told the dispatcher that he observed a silver SUV leaving Mr. Humphries's driveway, which was later determined to have been driven by Mr. Humphries's wife. According to Mr. Humphries's 911 call, he never brandished a gun and only threw a rock at Mr. Litton after Mr. Litton threw one at him.

{¶6}    Police arrived to the scene and questioned Mr. Humphries and his wife, who had returned home and parked the silver SUV in the driveway.  According to Officer Brent Heller, Mr. Humphries told him that Mr. Litton and his step-father threw a rock at him, so he threw one back.  He then retrieved a spatula from his kitchen and waved it at them.  When Officer Heller questioned Mr. Humphries as to where the spatula was, he dropped the subject.

{¶7}    While Mr. Humphries was outside near a police cruiser with Officer Brent Heller, police obtained Mr. Humphries's wife's consent to search the property, and asked her if there was a gun in the home.  She indicated there was, and led the police officers to the bedroom where she kept it.  Upon entering the bedroom, the officers observed an empty gun case "thrown" on the bed.  After initially indicating that the gun must have been stolen, Mr. Humphries's wife led the officers to the silver SUV where they located a loaded black and silver .38 caliber revolver underneath the hood.  The officers also located boxes of ammunition in the center console.

{¶8}    Police arrested Mr. Humphries, who was later charged with one count of having a weapon while under a disability in violation of Revised Code Section 2923.13(A)(3), one count of carrying a concealed weapon in violation of Section 2923.12(A)(2), one count of criminal damaging or endangering in violation of Section 2909.06(A)(1), and two counts of aggravated menacing in violation of Section 2903.21.  The case proceeded to a jury trial on all counts except criminal damaging.

{¶9}    At trial, the State presented testimony from the responding officers, as well as an expert in the field of fingerprint examination.  At the close of the State's case, Mr. Humphries moved for acquittal under Criminal Rule 29, which the trial court denied.  Mr. Humphries did not testify at trial, but two of his neighbors who observed the altercation testified on his behalf.

After presenting his defense, Mr. Humphries renewed his motion under Criminal Rule 29, which the trial court again denied. The jury found Mr. Humphries guilty of having a weapon under a disability, carrying a concealed weapon, and one count of aggravated menacing. The trial court sentenced Mr. Humphries to a total of nine months in prison. Mr. Humphries now appeals his convictions and raises two assignments of error.

II.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶10} In his first assignment of error, Mr. Humphries argues that his convictions are not supported by sufficient evidence, and that the trial court erred by denying his motion for acquittal. Specifically, he argues that the only evidence of criminal or threatening activity presented at trial came from Mr. Litton, which, he argues, was self-serving and contradicted by the defense witnesses. Further, he argues that the evidence at trial established that he did not possess a gun at any time.

{¶11} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶12}  As previously noted, the jury found Mr. Humphries guilty of violating Revised Code Sections 2923.12(A)(2), 2923.13(A)(3), and 2903.21.  Section 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun[.]"  Section 2923.13(A)(3) provides that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]"  At trial, it was undisputed that Mr. Humphries was under a disability for purposes of Section 2923.13(A)(3).  Lastly, Section 2903.21(A) provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person[.]"

{¶13}  The testimony adduced at trial, if believed, would indicate that Mr. Humphries possessed and concealed a gun, pointed it at Mr. Litton, threatened to shoot him, and that Mr. Litton feared that Mr. Humphries would inflict serious physical harm.  Mr. Humphries's argument that Mr. Litton's testimony was self-serving and contradicted by the defense witnesses challenges Mr. Litton's credibility and, therefore, sounds in manifest weight, not sufficiency. *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 24.  Consequently, we reject Mr. Humphries's argument and overrule his first assignment of error. *Id.*

## ASSIGNMENT OF ERROR II

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14}  Mr. Humphries also argues that his convictions are against the manifest weight of the evidence.  If a defendant asserts that a conviction is against the manifest weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶15} Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶16} Mr. Humphries argues that his convictions are against the manifest weight of the evidence because: (1) the police officers the State called as witnesses had no direct knowledge of the underlying events; (2) he had no way of hiding the gun underneath the hood of the SUV, where it was ultimately found; (3) Mr. Litton's testimony was biased; and (4) his witnesses contradicted Mr. Litton's testimony. The State, on the other hand, argues that it presented a more credible case, and that the manifest weight of the evidence supports the jury's verdict.

{¶17} We note that "[c]redibility determinations are primarily within the province of the trier of fact." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42, citing *State v. Violett*, 9th Dist. Medina No. 11CA0106–M, 2012–Ohio–2685, ¶ 11. "The fact-finder 'is free to believe all, part, or none of the testimony of each witness.'" *Id.*, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35. Here, the jury reviewed all of the evidence and assessed the credibility of the witnesses, including the police officers, Mr. Litton, and Mr. Humphries's two neighbors.

{¶18} Notably, Mr. Humphries's witnesses contradicted each other, as well as Mr. Humphries's own version of events. For example, Mr. Humphries told the 911 dispatcher and

Officer Heller that he threw a rock at Mr. Litton and his step-father after a rock was thrown at him. His witnesses, however, testified that they never saw him throw a rock. Both witnesses also testified that they never saw anything in Mr. Humphries's hands, which contradicted his statement to Officer Heller that he waved a spatula at Mr. Litton and his step-father. Further, one of his witnesses described the altercation as "nothing to * * * be concerned about[,]" yet his other witness wrote a witness statement indicating that Mr. Litton and his step-father were shouting racial slurs, throwing rocks, and threatening Mr. Humphries with a metal pipe. Further yet, Mr. Humphries argues that he never possessed the gun and had no way of hiding it underneath the hood of the SUV. Mr. Litton, however, accurately described the gun to the 911 dispatcher, which was later found underneath the hood of the SUV that Mr. Humphries's wife drove away from the property for a brief period of time after the altercation.

{¶19} Having reviewed the record, we cannot say that the jury clearly lost its way when it accepted the State's version of the events. *See Thompkins*, 78 Ohio St.3d at 387. Mr. Humphries's convictions, therefore, are not against the manifest weight of the evidence. Accordingly, Mr. Humphries's second assignment of error is overruled.

III.

{¶20} Mr. Humphries's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT


CARR, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.