[Cite as *State v. Stratford*, 2022-Ohio-1497.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110767 |
| v. | : | |
| MATTHEW STRATFORD, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 5, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-649674-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecutor, and
Kerry A. Sowul, Assistant County Prosecutor, *for appellee.*

Law Office of Timothy Farrell Sweeney, and Timothy F.
Sweeney, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Matthew Stratford ("Stratford") appeals his conviction following a bench trial. For the reasons set forth below, we affirm.

{¶ 2} In October of 2020, a grand jury indicted Stratford on three counts of rape and two counts of gross sexual imposition. All counts had sexually violent

predator specifications attached. Stratford pled not guilty at his arraignment; several pretrials were conducted, and after Stratford waived his right to a jury trial, a bench trial commenced on June 17, 2021. Stratford elected to have the sexually violent predator specifications heard separately.

{¶ 3} The allegations surfaced after T.P., Stratford's daughter, was sent to a juvenile detention center after an altercation with her mother, M.P. While there T.P. revealed to staff that Stratford had sexually assaulted her from the time she was four to six years old until she was 11. M.P. revealed at trial that T.P. disclosed the sexual assault to her several months earlier, however, she was unable to convince T.P. to go to the authorities. Ultimately, she did not want to force T.P. to report it but informed her that they could do so when she was ready.

{¶ 4} After the disclosure, Lorain County Children's Services ("LCCS") began to investigate the allegations. Matthew Ketterick, a continuous quality coordinator for LCCS conducted a forensic interview with T.P. T.P. disclosed that one incident occurred at her father's apartment when they were sleeping on a futon next to her father's wife. A second incident occurred while she was at her paternal grandmother's home. That incident happened in a loft area away from the remainder of the family.

{¶ 5} T.P.'s testimony at trial differed slightly from the statement given to Ketterick. T.P. testified that her father's other two children were in the home when the first assault occurred. Her brother was upstairs in his room and her baby sister was in a crib in the same room as the futon. T.P. testified the second assault occurred

when her father took her upstairs during a Super Bowl party at her paternal grandmother's home.

{¶ 6} At trial, M.P. was asked if she noticed any changes in T.P. M.P. indicated, that once she realized what had been happening to T.P., she noticed that T.P. stopped wearing dresses and skirts, and started wearing baggy clothes. T.P. became very closed off and didn't want to interact with anyone. T.P. didn't want to be touched and barely let M.P. hug her. Further, T.P. is not close to any male family members. M.P. stated T.P. wants nothing to do with men. M.P. thought these changes signaled puberty, or that T.P. was developing her own style.

{¶ 7} M.P. also relayed a story about the last time she took T.P. to visit Stratford. Stratford and M.P. did not have a visitation plan. Typically, T.P. would ask to visit Stratford and M.P. would arrange for her to have a visit. M.P. always drove T.P. to visits and picked her up. On this occasion when she picked T.P. up, Stratford put T.P. in the backseat of M.P.'s car and said to her, "Now, don't forget our secret." When M.P. asked Stratford what that meant, he said, "Nothing." After they drove away, M.P. asked T.P. what the secret was. M.P. described T.P. as looking disgusted, before replying, "Nothing." T.P. never visited again, though she remained in contact with Stratford via texts and phone calls. When looking back, M.P. testified that she felt "dumb" and wondered how she did not catch on to what was happening to her daughter.

{¶ 8} At the end of the state's case, the state moved to dismiss one count of rape as the count was not supported by the testimony. The trial court granted the motion.

{¶ 9} The defense presented the testimony of S.S., Stratford's mother, who testified that she never had a Super Bowl party. She further testified that she had several birthday parties over the years for family members, however, T.P. had never attended because she lived too far away.

{¶ 10} The defense made a Crim.R. 29 motion for acquittal at the close of testimony, that the trial court denied. After closing arguments, the trial court took the case under advisement.

{¶ 11} On June 24, 2021, the trial court found Stratford guilty of one count of rape and not guilty on the remaining charges. The trial court proceeded with the hearing on the sexually violent predator specification. After submission of exhibits and argument of counsel, the trial court found Stratford not guilty of the sexually violent predator specification.

{¶ 12} On July 28, 2021, the trial court sentenced Stratford to life in prison with parole eligibility after 25 years. Stratford appeals and assigns the following errors for our review.

### Assignment of Error No. 1

Stratford's conviction of rape is unconstitutional, in violation of his right to due process under the Ohio and U.S. Constitutions, because it is based on evidence that is insufficient under governing state and federal constitutional standards. A rape conviction based only upon the uncorroborated testimony of an alleged child victim, about an

alleged incident which occurred many years ago when the child was only 4 to 6 years old, is constitutionally insufficient to sustain a conviction when the child's testimony is contradictory, vague, insubstantial, and inherently improbable.

## Assignment of Error No. 2

Stratford's conviction for rape is against the manifest weight of the evidence because it is based only upon the uncorroborated testimony of an alleged child victim, about an alleged incident which occurred many years ago when the child was only 4 to 6 years old, and when the child's testimony is contradictory, vague, insubstantial, and inherently improbable.

## Sufficiency of the Evidence

{¶ 13} In the first assignment of error, Stratford argues that his conviction was not supported by sufficient evidence. We disagree.

{¶ 14} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Sufficiency of the evidence involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The question is not "'whether the state's evidence is to be

believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

{¶ 15} In order for the appellant to be convicted of rape, the state had to prove beyond a reasonable doubt that Stratford did engage in sexual conduct with T.P., who was not his spouse, when T.P. was less than 13 years of age, whether or not he knew T.P.'s age. Further, the state had to prove beyond a reasonable doubt that Stratford purposely compelled T.P., who was under the age of ten at the time of the offense, to submit by force or threat of force.

{¶ 16} T.P. testified about several incidents that occurred between herself and her father. However, the incident that she remembered the most detail about was the first. She testified that it occurred when she was five or six years old, which would have been around 2011 or 2012. She testified that Stratford asked her if she wanted to lay on his chest, something they had done before, and she said yes. He then proceeded to pull down his pants, and then hers when, she testified, he "penetrated me in the vaginal area with his penis." T.P. testified that it lasted for about 15 minutes. She then went upstairs to the bathroom. Stratford followed her and told her this was their "little secret."

{¶ 17} Based on this testimony, there was sufficient evidence if believed by the trier of fact to support finding Stratford guilty of rape beyond a reasonable doubt. Furthermore, there was sufficient evidence if believed by the trier of fact to support a finding that Stratford compelled T.P. to submit by force or threat of force beyond a reasonable doubt.

{¶ 18} The Ohio Supreme Court has noted that "'force need not be overt and physically brutal, but can be subtle and psychological.'" *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998), quoting *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), citing *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390, 395 (8th Dist.1985). The forceable element of rape can be established when it is shown that the rape victim's will was overcome by fear or duress. *Id.* "[B]ecause of a child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey." *Id.* This dynamic appears here based on the father-daughter relationship between T.P. and Stratford, and his instructing her that the incident was their "little secret," an exhortation to tell no one.

{¶ 19} Accordingly, we overrule the first assignment of error.

**Weight of the Evidence**

{¶ 20} In the second assignment of error, Stratford argues that his conviction was against the manifest weight of the evidence. We disagree.

{¶ 21} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all of the

evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} Furthermore, in examining the manifest weight of the evidence, "the weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact." *State v. Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, and 107261, 2019-Ohio-4054, ¶ 70, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact may "'believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *Id.,* quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "'[A]n appellate court may not substitute its own judgment for that of the finder of fact.'" *Harris* at ¶ 33, quoting *State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, ¶ 40, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶ 23} In his brief, Stratford argues that T.P.'s recount of what happened was implausible and marred by contradictions and inconsistencies. Stratford further argues that T.P. had a motive to lie and made up the events to deflect attention from abuse allegations against her mother. Finally, Stratford argues that the lack of any contemporaneous outcry witness, i.e., a witness whom T.P. might have confided in at the time of the alleged assault, and the absence of physical evidence are additional bases that his conviction was against the manifest weight of the evidence. Based on

the foregoing, Stratford argues that the trial court lost its way and created a manifest miscarriage of justice warranting the reversal of Stratford's conviction.

{¶ 24} In a weight of the evidence challenge the trier of fact is "best able to 'view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 14, quoting *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24.

{¶ 25} In the instant case, the record demonstrates that the trial court weighed the victim's testimony and resolved any inconsistencies. Ultimately, the trial court dismissed one count of rape, finding there was insufficient evidence to support it. Further, the trial court found Stratford not guilty of three of the remaining four counts, finding the counts were not proven beyond a reasonable doubt.

{¶ 26} The trial court's guilty finding on the remaining count of rape is supported by the weight of the evidence. T.P. testified clearly about what occurred. Stratford asks us to speculate that T.P.'s language is not typical for a 14 year old girl. However, the trial court was in the best position to determine whether T.P.'s use of language seemed forced or awkward indicating she was using words that were not typical for *her* vocabulary.

{¶ 27} Stratford also argues that the way in which T.P. alleges the rape occurred is implausible. Specifically, he argues that it is implausible that T.P. did not cry out or protest during the assault, that it is implausible that it happened while

T.P. and Stratford were lying next to his wife, and the way in which it happened is not "typically" the way the rape of a child would occur.

{¶ 28} There is no playbook for how a child would react to sexual assault or the way in which the assault "typically" occurs. We cannot say that T.P.'s reaction to and description of what occurred is so out of the realm of possibility that it lacks credibility. With respect to the assault occurring while Stratford's wife lay next to them on the bed, the trial court is permitted to believe all, part, or none of the testimony from a witness. *Metz*, 8th Dist. Cuyahoga Nos. 107212, 107246, 107259, and 107261, 2019-Ohio-4054, at ¶ 70. The trial court could have believed that the sexual assault occurred, but not that it occurred while Stratford's wife was lying on the bed with them.

{¶ 29} Finally, to the extent that Stratford argues that T.P.'s testimony was not supported by forensic evidence or witness testimony, there is no requirement that a rape victim's testimony be corroborated. *McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, at ¶ 15, citing *State v. Brothers*, 8th Dist. Cuyahoga No. 100163, 2015-Ohio-2283, ¶ 6, citing *State v. Gingell*, 7 Ohio App.3d 364, 365, 455 N.E.2d 1066 (1st Dist.1982).

{¶ 30} Based on the foregoing, we find that Stratford's conviction was supported by the greater weight of the evidence. Accordingly, we overrule the second assignment of error.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN A. GALLAGHER, J., CONCUR