[Cite as *State v. Madison*, 2023-Ohio-4261.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                                              :

                               Plaintiff-Appellee,          :          Case No. 22CA23

                            v.                                              :

DAVID W. MADISON,                                    :          DECISION AND JUDGMENT ENTRY

        Defendant-Appellant.              :

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Nicole Tipton Coil, Washington County Prosecuting Attorney, Marietta, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-16-23
ABELE, J.

{¶1} This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. A jury found David W. Madison, defendant below and appellee herein, guilty of two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The trial court sentenced him to serve (1) a term of life in prison with parole possibility after ten years on the first count, and (2) a term of life in prison without parole possibility on the

second count.

Appellant assigns the following error for review:

> "DEFENDANT-APPELLANT'S CONVICTIONS OF TWO
> COUNTS OF RAPE ARE AGAINST THE MANIFEST
> WEIGHT OF THE EVIDENCE."

{¶2} On December 15, 2021, a Washington County Grand Jury returned an indictment that charged appellant with two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The first count involved A.N.M., an 11-year-old child. The second count involved K.G.M.-H., a 9-year-old child. Appellant entered not guilty pleas.

{¶3} In September 2022, the trial court held a jury trial. K.G.M.-H. testified first and stated that appellant is her grandfather and she sometimes stayed overnight at his house along with A.N.M. (appellant's daughter) and another of appellant's daughters. K.G.M.-H. reported that she watched "[i]nappropriate videos" with appellant. She explained that one video depicted "a boy and a girl and they were doing something weird," and she thought the boy looked older than the girl. She additionally testified that she and A.N.M. sometimes showered with appellant. K.G.M.-H. could not, however, recall many other details.

{¶4} Sarah Crookshanks, whose father dated A.N.M.'s mother, stated that on November 6, 2021, A.N.M. told her that she

showered with appellant.  Sarah gave A.N.M. a notebook and suggested that if she felt uncomfortable discussing the incident, she should write in the notebook what had happened. Sarah observed A.N.M. write her account in the notebook.  Sarah testified that A.N.M. wrote, "my dad touched me when I'm in the shower with him.  This happened more than – more times than I can count.  For two years, my dad has done it to me."  A.N.M. also wrote that appellant "did it to her niece and my dad has done it to me.  The last time my dad did it, was on November 2nd, 2021."  The next morning, they called the police and the police stated that A.N.M.'s mother should bring A.N.M. to the police station.

{¶5}  A.N.M. testified that appellant "made bad decisions" and that she told her mother and her grandparents about these "bad decisions."  She then talked with children services and stated that "it" was not true.  A.N.M. explained that she later told Sarah what had happened.  She eventually spoke with a forensic interviewer from children services, Johnnie Wigal.

{¶6}  A.N.M. stated that she talked to Johnnie a couple of days after the most recent incident.  She explained that she watched television in the bedroom with appellant and after a couple of hours, appellant went to shower.  After showering, he watched videos on his computer that showed naked "girls and this

boy having inappropriate contact together."  One video showed a female child with "an older man."  A.N.M. did not watch the video with appellant, but caught it "out of the corner of her eye."  Appellant, however, asked her to watch the videos on other occasions.

{¶7}  After appellant watched the videos, he asked A.N.M. to accompany him to the bedroom.  She knew what would happen "[b]ecause it happened before."  A.N.M. explained that appellant has been doing "it" to her for about five years and to K.G.M.-H. for about two years.  A.N.M. stated that, if she tried to "stop it, [appellant] would beat" her.

{¶8}  A.N.M. reported that, when she went in the bedroom, appellant asked her to "get on the bed" and "take [her] pants off."  Appellant also told K.G.M.-H. to remove her clothes. When appellant finished with K.G.M.-H., he told A.N.M. to remove all of her clothes and he used his "private part" and placed it inside her vagina.  A.N.M. stated that appellant did "the same things" to K.G.M.-H.  She saw "white stuff" "c[o]me out of" appellant.  A.N.M. reported that appellant "put [the white stuff] inside of K.G.M.-H.," but did not "put it inside of [her], because he knew it would happen."  She has observed the "white stuff" fall on the floor and on the bed.  After appellant finished, he told her and K.G.M.-H. to shower and he sprayed

their private areas with a hose.

{¶9}  A.N.M. further stated that appellant "had this stuff in his drawer that he would put inside of" her and K.G.M.-H – one a pink sex toy and one purple.  A.N.M. also observed Vaseline and "a bottle with a purple lid."  The prosecutor showed A.N.M. a photograph of items recovered during the search warrant execution, and A.N.M. identified one item as "[t]he yellow one" that "would burn."

{¶10} A.N.M. stated that on another occasion, appellant "was doing stuff to" her, and her stepmom, Carrie Madison, walked into the room.  Her stepmom "just gave [appellant] the food" that she had prepared "and walked out."  A.N.M. explained that, other than this occasion, adults typically were not present when appellant had sexual contact with her.  She stated that the sexual conduct usually occurred on Tuesdays and Wednesdays, when her stepmom was not home.  During these incidents, appellant placed sex toys or his fingers inside her and K.G.M.-H.'s vaginas or "butt," and sometimes he asked A.N.M. to place her lips on his "private part."

{¶11} A.N.M. testified that she did not talk to her stepmom about what was happening, but she had told her mother.  A.N.M.'s mother then asked the stepmother about it, but "she would just say, no."  A.N.M. stated that one time after she told her mother

and her mother's parents about what had happened, they took her to children services.  When children services asked her about the allegations in the presence of appellant, she denied the allegations.  A.N.M. instead reported that her mother told her to fabricate the allegations.  She later informed appellant that her mother advised her to fabricate the allegations so that appellant would not "beat" her.  Appellant then instructed A.N.M. to concoct a story that she "was mad at him."

{¶12} Patrolman Jesse Whittington testified that on November 9, 2021, he helped obtain and execute a search warrant upon appellant's residence.  During the search, officers took "a purple sex toy, a pink sex toy, about four other sex related items * * * and then [appellant's] cell phone."

{¶13} Washington County Sheriff's Lieutenant Scott Smeeks testified that when he helped execute the search warrant, he used a blue light to detect the presence of semen on the floor. Smeeks found "all the signs of a lot of semen" beside the bed and on the floor leading into an attached bathroom.  Smeeks also looked at appellant's computer search history and discovered that he viewed websites with "father-daughter type porn."

{¶14} Lieutenant Smeeks further explained that he interviewed appellant and reported that appellant "pretty much knew why I was there.  It was obvious when I was talking to him,

he knew why I was there." Smeeks stated that appellant "totally denied" the allegations and believed that one of the girls' mothers urged the girls to make these allegations. Appellant informed Smeeks that he has genital warts and, if he had done anything to the girls, they would test positive.

{¶15} Two forensic scientists testified. One stated that two of the sex devices contained DNA consistent with A.N.M.'s DNA profile. The other witness reported that YSTR testing indicated that one device contained DNA consistent with appellant's profile.

{¶16} Belpre Police Sergeant Michael Stump testified that, on December 12, 2021, he visited appellant's residence to follow-up on a report of an individual making suicidal threats. When Stump arrived, appellant was on the telephone. Stump asked him about his well-being, and appellant denied any suicidal thoughts. Stump, however, heard appellant speak to someone on the phone and appellant "seemed to be making arrangements for someone to care for some pets or animals in the residence and was describing where important documents were." At that point, Stump informed appellant that he could voluntarily go to the hospital for a wellness check. Appellant agreed, and Stump transported him. After their arrival at the hospital, Stump informed hospital staff of the circumstances and concern for

self-harm.  Appellant agreed to stay.

{¶17} Marietta Police Patrol Sergeant Tyson Estes testified that he responded to appellant's residence and assisted Sergeant Stump.  Estes was aware of the allegations against appellant and informed appellant that "in general," when "a person * * * is remorseful," they "could be treated better" or "looked more positively on."  Appellant stated, "well, even if I tell you that I did do it, it wouldn't help anything, because of their age."  He denied, however, that he sexually abused either child.  Appellant did admit that, at some point within the past year, he showered with one of the girls because they had worked "on a car and had gotten dirty."  But, nothing sexual about the shower occurred.

{¶18} Carrie Madison testified that she had been married to appellant until their February 2018 divorce.  She continued to live nearby, and, in 2020, she visited appellant's house five days a week for the girls.  She left two days each week to "get a break" from arguing with appellant.

{¶19} Carrie stated that she and appellant attempted to get back together, but "he's not a very nice man sometimes."  She explained one incident when he "threatened to stab [her] through the chest so hard it would go through the floor."

{¶20} Carrie never observed appellant physically harm A.N.M.

She did know that he showered with A.N.M., and told "him that wasn't appropriate." Carrie stated that if anything had "been going on," she "would have heard it."

{¶21} Belpre Police Detective Kerry Nichols testified that A.N.M. and her mother came to the police department with the notebook. A.N.M. reported that the incident she described in the notebook occurred "Tuesday last week." In response, Nichols visited appellant's residence. Appellant stated that the last time that he would have showered with a child would have been when the child was around four or five years of age. He also denied the sexual-abuse allegations. Nichols then examined appellant's phone and found pornography searches related to "daddy daughter porn and teen tits."

{¶22} Appellant testified in his defense and stated that, in 2018 or 2019, A.N.M. alleged that he had sexually abused her. She, however, later recanted. Appellant claimed that A.N.M. told his former wife, Carrie, "that it never happened" and that A.N.M.'s mother told A.N.M. to fabricate the allegation. He believed that "it was a ploy for custody."

{¶23} When police visited appellant's home in November 2021 to investigate the recent allegations and the detective explained the reason for his visit, appellant was "flabbergasted." He could not believe that A.N.M. made these

allegations "again." Appellant stated that the "first words out of [his] mouth" were that A.N.M.'s mother "put her up to it again."

{¶24} Appellant further testified that he was present when the officers executed the search warrant a few days later. He had installed cameras throughout his residence with one in his bedroom. Appellant explained that he placed a camera in his bedroom "to catch" A.N.M. rummaging through his drawers. He claimed that she did it often, and when confronted, "she would lie about it." Appellant did not tell the officers about the existence of these cameras, however, because the officers did not tell him when the alleged conduct occurred. Appellant related that, if the officers told him a date, he "could have directed them towards video footage, anything that could have helped them."

{¶25} Appellant indicated that one item officers discovered during the search is "a penis pump." He stated that he suffered from erectile dysfunction and he tried Viagra, but it did not work "as well as [he] would hope." Appellant also testified that he has genital warts that resurface every few years. Appellant explained that another item officers discovered is "a numbing agent for tattooing." He suggested that this numbing agent "would definitely hurt somebody if they would put it on a

soft tissue." He denied, however, that he used it for sexual activity.

{¶26} Appellant also reported that his bathroom shower is small and he helped the children with their showers when they were younger and unable "to fend for themselves." He denied, however, any type of sexual activity with either child.

{¶27} After hearing the evidence, the jury found appellant guilty of both offenses as charged in the indictment.

{¶28} On December 2, 2022, the trial court sentenced appellant to serve (1) a term of life in prison with parole possibility after ten years for count one, and (2) a term of life in prison without parole possibility for count two. The court also found appellant to be a Tier III sex-offender registrant. This appeal followed.

{¶29} In his sole assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence. He contends that the state's primary witness, A.N.M., "is a known and repeated liar" and "she confused several key facts like upon who [appellant] may have allegedly used the sex toys." Appellant further claims that A.N.M.'s testimony that appellant placed his "private part" inside her vagina does not constitute "substantial evidence that survives a manifest evidence review."

**{¶30}** The state responds that appellant's convictions are not against the manifest weight of the evidence.  The state argues that (1) A.N.M.'s testimony provided the jury with substantial evidence that appellant committed two counts of rape, and (2) the jury did not lose its way crediting A.N.M.'s testimony and choosing not to believe appellant's testimony.

**{¶31}** We observe that the "question to be answered when a manifest-weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.  A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'"  *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328; *accord State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 80.  The reviewing court must bear in mind, however, that credibility generally is an issue for the

trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'"  *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997).  As the court in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).  Thus, an appellate court will generally leave issues of weight and credibility of the evidence to the fact finder, as

long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

**{¶32}** Consequently, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley*; *accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (a judgment is not against the manifest weight of the evidence when "'"the greater amount of credible evidence" " supports it). A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in

the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶33}** We additionally note that "a verdict is not against the manifest weight of the evidence simply because the fact finder opts to believe the state's witnesses."  *State v. Donohue*, 4th Dist. Ross No. 18CA3637, 2018-Ohio-4819, ¶ 20.  "Moreover, a conviction is not against the manifest weight of the evidence even if the 'evidence is subject to different interpretations.'"  *State v. Sims*, 2023-Ohio-1179, 212 N.E.3d 458, ¶ 119 (4th Dist.), quoting *State v. Adams*, 2d Dist. Greene Nos. 2013CA61, 2013-CA-62, 2014-Ohio-3432, ¶ 24.

**{¶34}** In the case sub judice, R.C. 2907.02(A)(1)(b) sets forth the essential elements of the rape offenses as alleged in the indictment.  The statute provides:

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
> * * * *
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶35}** Appellant asserts that the testimony presented at

trial to support the elements of the offenses is not credible.

Specifically, appellant claims that A.N.M. is not a credible

witness primarily due to past sexual-abuse allegations she

levied against appellant that she later recanted.  He points out

that A.N.M. provided the only testimony that sexual conduct

occurred between appellant and the two girls.  Appellant thus

argues that because her testimony is unbelievable, substantial

evidence of sexual conduct does not exist.

**{¶36}** We first observe that "a rape conviction may rest

solely on the victim's testimony, if believed."  *State v.*

*Daniels*, 8th Dist. Cuyahoga No. 92563, 2010-Ohio-899, ¶ 58;

*e.g., State v. Bennett*, 4th Dist. Ross No. 21CA3751, 2023-Ohio-

2734, ¶ 61; *State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-

Ohio-3316, ¶ 48; *State v. Horsley*, 2018-Ohio-1591, 110 N.E.2d

624, ¶ 74 (4th Dist.).  Consequently, "[c]orroboration of victim

testimony in rape cases is not required."  *State v. Johnson*, 112

Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53; *e.g.,*

*State v. Galloway*, 10th Dist. Franklin No. 84AP-890, 1985 WL

10237, *1 (Apr. 9, 1985) ("there is no basis in law or logic

that a conviction of rape must have corroborative supporting

evidence").

**{¶37}** Additionally, in rape cases that involve children,

"[m]any courts have determined that inconsistencies in the

statements of children regarding sexual conduct do not render judgments against the manifest weight of the evidence; jurors may simply take note of such inconsistencies and resolve or discount them accordingly." *State v. Steible*, 9th Dist. Lorain No. 21CA011787, 2023-Ohio-281, ¶ 20, citing *State v. Williams*, 5th Dist. Stark No. 2021CA00081, 2022-Ohio-2245, ¶ 58 ("inconsistencies in the five-year-old child victim's statements regarding the sexual conduct does not render the judgment against the manifest weight or sufficiency of the evidence"); *State v. Long*, 12th Dist. Warren No. CA2019-08-078, 2020-Ohio-2678, ¶ 27 ("[w]hile the child's testimony and interviews exhibited some inconsistencies, the jury was in the best position to judge the credibility of her trial testimony and her explanation for the inconsistencies"); *State v. Tiggett*, 11th Dist. Trumbull No. 2018-T-0036, 2019-Ohio-1715, ¶ 35 ("[w]hile there may have been other minor inconsistencies or issues with the testimony, it was again for the jury to determine [the victim's] credibility"); *State v. McCluskey*, 4th Dist. Ross No. 17CA3604, 2018-Ohio-4859, ¶ 33 ("to the extent [the] testimony indicated an inconsistency in the child's statements, the jury was able to hear, evaluate and weigh that inconsistency in their deliberations"); *accord State v. Sampson*, 9th Dist. Wayne No. 22AP0026, 2023-Ohio-2342, ¶ 32 (even though some of child

victim's testimony "varied, [the child] consistently maintained that [the defendant]– at a minimum – touched her buttocks with his penis and touched her vagina with his finger").

{¶38} Moreover, "[i]t is not inconceivable for a young child to not recall every specific detail of a sexual assault that occurred years ago with one hundred percent accuracy." *Steible* at ¶ 20 citing *State v. Jackson*, 1st Dist. Hamilton No. C-210466, 2022-Ohio-2562, ¶ 76 ("[i]t is not inconceivable that [a 10-year-old] child would not recall the specific details * * * with 100 percent accuracy"); *see State v. Stratford*, 8th Dist. Cuyahoga No. 110767, 2022-Ohio-1497, ¶ 28 ("There is no playbook for how a child would react to sexual assault * * *.").

{¶39} In the case sub judice, we disagree with appellant that A.N.M.'s testimony that appellant placed his penis inside her and the other child's vaginas fails to constitute substantial evidence that he committed the offenses.  We believe that the jury could have found appellant's assertion that A.N.M.'s testimony is unbelievable because she is "a known and repeated liar" to be meritless.  Instead, A.N.M. explained that she had recounted a previous allegation against appellant because children services had asked her about those allegations in appellant's presence.  A.N.M. stated that she was afraid appellant would harm her if she did not recant the allegations.

*See generally State v. McPherson*, 9th Dist. Lorain No. 08CA009377, 2009-Ohio-1426, ¶ 41 (upholding conviction even though victim admitted that she lied during initial interview with officers when testimony showed that "recanting is a normal, expected element of the process because children often feel responsible for breaking up the family"). A.N.M. thus offered a plausible reason why she initially recanted her allegations, and the jury is entitled to weigh it accordingly during deliberations.

{¶40} Additionally, although physical or other evidence is not necessary to corroborate a rape victim's testimony, in the case before us physical evidence does corroborate A.N.M.'s testimony and helps to bolster the credibility of her testimony. A.N.M. testified that appellant's semen fell to the floor beside the bed, and, during the search-warrant execution, officers discovered "a lot" of semen on the floor next to the bed. This discovery corroborates A.N.M.'s testimony that "white stuff" fell on the floor.

{¶41} A.N.M. also testified that appellant sometimes used sex toys on her and the other child. Forensic scientists found A.N.M.'s DNA on two of the sex toys and "Y-STR DNA" consistent with appellant's or a male relative's profile on one toy. This evidence helps to corroborate A.N.M.'s testimony that appellant

used sex toys on her.

**{¶42}** Furthermore, A.N.M. stated that appellant made her watch pornographic videos, and officers found in appellant's search history phrases "daddy porn" and "teen tits." This discovery likewise helps to corroborate A.N.M.'s testimony that appellant forced her to watch pornographic videos.

**{¶43}** Moreover, even if A.N.M.'s testimony contains some inconsistencies or inaccuracies, the jury is in a position to hear, evaluate, and weigh any inconsistencies or inaccuracies during deliberations. In addition, we do not believe that the record suggests that A.N.M.'s testimony "suffers from such serious discrepancies that we, as a reviewing court relying on 'a cold, paper record,' must supplant the jury's determination of credibility." *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732 (9th Dist.), ¶ 30, quoting *In re B.B.*, 8th Dist. Cuyahoga No. 81948, 2003-Ohio-5920, ¶ 31. Here, the jury obviously weighed A.N.M.'s testimony and ultimately found it credible. We, a court of review, are ill-equipped to second-guess the jury's decision. *See State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999) ("[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not

our province to choose which one we believe").

**{¶44}** Appellant also asserts that the state "masked its lack of evidence by setting out improper showering and the use of sex toys which did not even happen" on November 2, 2021. To the extent that appellant argues that the trial court erred by admitting this type of evidence, we point out that appellant did not raise this issue as an assignment of error. We therefore will not consider it as a basis for reversal. *See* App.R. 16(A)(3) (appellant's brief "shall include * * * [a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected"); App.R. 12(A)(1)(b) (appellate court "shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App. R. 16"); *State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 10 ("[a]ppellate courts review assignments of error - we sustain or overrule only assignments of error and not mere arguments").

**{¶45}** Moreover, as we stated above, A.N.M.'s testimony, which the jury obviously believed, establishes the elements of the offenses. Thus, we disagree with appellant that the state adduced a lack of evidence to establish the elements of the crimes.

**{¶46}** Consequently, after our review we do not believe that

the case at bar is one of those exceptional cases in which the evidence weighs heavily against appellant's convictions.  We therefore disagree with appellant that his convictions are against the manifest weight of the evidence.

{¶47} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

                                        JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal. A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele,
Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.