[Cite as *State v. Jones*, 2026-Ohio-2126.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-11-025 |
| vs. | : | <u>OPINION AND<br>JUDGMENT ENTRY</u><br>6/8/2026 |
| CLARENCE JONES, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20250115

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

---

# **O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Clarence Jones, appeals his conviction in the Fayette County Court of Common Pleas following a jury trial. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   Appellant was indicted on two counts of rape (by force and involving a victim under the age of 13) and two counts of gross sexual imposition ("GSI") (also by force and involving a victim under the age of 13). The charges stemmed from allegations made by appellant's eight-year-old daughter that, in the fall of 2024, appellant engaged in sexual conduct or contact with her on the living room couch and/or on her bed. Appellant entered a plea of not guilty, and the case proceeded to a jury trial.

{¶ 3}   At trial, the victim's mother, who is also appellant's wife, testified that she received a Facebook message from an unknown woman a few days after Thanksgiving 2024 alleging that appellant was inappropriately touching their daughter. She confronted appellant with these allegations. Although appellant denied any wrongdoing, he agreed to vacate the family home. The mother subsequently arranged for the child to be interviewed by a forensic interviewer at Nationwide Children's Hospital.

{¶ 4}   The forensic interviewer testified regarding the interview and authenticated the recording, which was admitted into evidence and played for the jury. During the interview, the child described a series of events with appellant in the kitchen, living room, and her bedroom. The child disclosed that one night she got up from bed to get a drink of water from the kitchen and appellant approached her and showed her his "private part number one" which he uses "to go to the bathroom" and "to let out the stuff he drinks," referring to his penis. Appellant then had her watch a video on the couch of a "father and a daughter," involving an adult man and a teenage woman. The child was hesitant to describe the video, saying she could not remember what they were doing in the video, but also saying "they were doing what we were doing." A detective later testified that appellant's cell phone showed a history of accessing pornographic videos around the time of the incident; the titles indicated interfamilial relations and relations between fathers and

stepdaughters, therefore corroborating the child's statement.[1]

{¶ 5} The child stated that appellant touched her "under belly" over her clothes with his "number one," and her "under back" under her clothes with his hand. The child defined her "under belly" as what she used to urinate, referring to her vagina, and defined her "under back" as what she used to defecate, referring to her anus. The child recounted that appellant had her sit on his penis and touch it with her hand, she saw "white stuff" come out, and he wiped it off on the couch with his hand. Afterward, appellant took the child to her bedroom, and she put her head down on a "Squishmallow" pillow, but she did not want to talk about what happened after. The State did not call the child to testify at trial.

{¶ 6} A pediatric Sexual Assault Nurse Examiner also testified. The nurse collected swabs from the child but found no physical signs of sexual abuse upon examination. A forensic scientist from the Ohio Bureau of Criminal Investigation testified regarding laboratory testing. The swabs collected during the physical examination revealed no physical evidence linking appellant to sexual abuse.

{¶ 7} Additional testing was performed on cuttings from the living room couch and the child's comforter. Testing of the comforter revealed the presence of seminal fluid, but no sperm cells were identified. The DNA profile obtained from the comforter indicated a partial male contribution but was of insufficient quality for comparison. Cuttings taken from the couch tested negative for seminal fluid.

{¶ 8} Appellant testified in his own defense. He stated that his marriage was deteriorating and acknowledged viewing pornography on his cell phone. Appellant denied all allegations that he had sexually abused his daughter.

---

1. The detective clarified that the pornographic material involved adult actors, did not involve minor children, and was therefore legal to access/possess.

{¶ 9} The jury returned verdicts finding appellant guilty on both counts of GSI and not guilty on the remaining charges. The two GSI counts were merged for purposes of sentencing and appellant was sentenced to five years in prison.

{¶ 10} On appeal, appellant raises one assignment of error for our review.

## II. Legal Analysis

{¶ 11} Assignment of Error No. 1:

{¶ 12} DEFENDANT APPELLANT'S GUILTY VERDICTS FOR GROSS SEXUAL IMPOSITION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In his single assignment of error, appellant argues his two guilty verdicts for GSI were against the manifest weight of the evidence because the only evidence of sexual contact was his daughter's interview recording. Appellant argues there was no physical evidence to corroborate his daughter's statements, except for the presence of seminal fluid on her bedroom comforter, which was of insufficient quality for DNA comparison. Appellant speculates that as his marriage had been deteriorating, his wife had begun dating other men, and some unknown man might have contributed the seminal fluid to the child's comforter. Appellant further argues that his daughter's statements in the forensic interview were not credible because she varied on details in a story about her pet hamsters; specifically, she mixed up their names, their locations, and varied on how hard one bit her. We disagree with appellant's assessment of the evidence and find his arguments unconvincing.

{¶ 14} To determine whether a conviction is against the manifest weight of the evidence, appellate courts must examine "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6th Ed.1990). Stated differently, during this examination, appellate courts "review the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168.

{¶ 15} The statements of a child victim are sufficient to support a conviction for GSI and "the conviction will not be reversed as being against the manifest weight of the evidence merely because there was no forensic evidence to support it." *In re M.J.C.*, 2015-Ohio-820, ¶ 34 (12th Dist.); *see also State v. Moore*, 2019-Ohio-1671, ¶ 58, fn. 5 (finding two GSI convictions were supported by the manifest weight of the evidence where the only evidence was testimony from a forensic interviewer regarding the victim's disclosures). Here, in the forensic video interview, the child described a sexual encounter with appellant that moved from the kitchen, to the living room couch, and ultimately to her bed; she described how he had her touch his penis, how he touched her vagina with his penis and her anus with his hand, and how the encounter caused him to ejaculate. Other evidence presented to the jury bolstered her narrative; the child described how appellant showed her a video of a "father and a daughter" who were "doing what we were doing," and the forensic analysis of appellant's phone showed that, around the timeframe of the incident, he had viewed several pornographic videos involving relations with daughters/stepdaughters which may have been the same video. Additionally, the child stated the encounter continued to her bed, and seminal fluid was found on her comforter.

{¶ 16} To the extent that the child may have been inconsistent in describing her pet hamsters to the forensic interviewer, it did not require the jury to discredit her statements about the sexual assault. "[A] court will not reverse a conviction merely on inconsistencies in a victim's statements because the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. Jones*, 2013-

Ohio-150, ¶ 21 (12th Dist.); *see also State v. Madison*, 2023-Ohio-4261, ¶ 37 (4th Dist.) ("[M]any courts have determined that inconsistencies in the statements of children regarding sexual conduct do not render judgments against the manifest weight of the evidence; jurors may simply take note of such inconsistencies and resolve or discount them accordingly.").

### III. Conclusion

{¶ 17} We find the jury did not clearly lose its way in weighing the evidence and assessing the child's credibility; appellant's guilty verdicts for GSI were not against the manifest weight of the evidence. Appellant's single assignment of error is overruled.

{¶ 18} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

- 7 -

_____
# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*